**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**NEPTALI JARAMILLO and IRA NAVARRO, Individually and on Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**v.**

**GARDA, INC., GARDA CL GREAT LAKES, INC. and DANIEL WEBB,**

**Defendants.**

**Case No. 12 C 662**

**Hon. Harry D. Leinenweber**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary for Judgment. For the reasons stated herein, the Motion is granted.

## I. BACKGROUND

Defendant Garda CL Great Lakes, Inc. ("Garda") is a secured transportation service company that provides armored vehicle transportation. Plaintiffs are past and current drivers or messengers at Garda's Broadview, Illinois branch. Drivers at Garda are assigned to various routes for pickups and deliveries, while messengers assist drivers in loading the armored vehicles.

At the Broadview branch, Garda's business includes transporting coin, currency, checks, negotiable instruments, and other valuables to and from customers. Drivers at the Broadview branch make biweekly trips between the Federal Reserve in Chicago

and the Federal Reserve in Davenport, Iowa. Drivers also transport coin and currency to and from Milwaukee, Wisconsin and Indianapolis, Indiana five days a week.

Garda's Broadview branch utilizes a fleet of more than 100 armored vehicles. The majority of these vehicles have a gross vehicle weight rating ("GVWR") of more than 10,001 pounds ("large vehicles"). A limited number of vehicles have a GVWR of less than 10,001 pounds ("small vehicles"). Plaintiffs have driven both large and small vehicles as employees for Garda.

Garda is a Federal Motor Carrier Safety Administration ("FMCSA") certified company and holds U.S. Department of Transportation ("DOT") FMCSA Number USDOT # 163997. This certification requires Garda to comply with FMCSA's rules, regulations, and procedures.

Plaintiffs filed this lawsuit against Defendant Garda, Garda, Inc., and Daniel Webb, Garda's Broadview Branch Manager, (collectively the "Defendants") under the Illinois Minimum Wage Law ("IMWL," 820 ILL. COMP. STAT. 105/1, *et seq.*), and the federal Fair Labor Standards Act, ("FLSA," 29 U.S.C. §§ 201 *et seq*.). Plaintiffs allege that Defendants failed to pay Plaintiffs the appropriate overtime rate for hours worked in excess of 40 hours per week. Plaintiffs brought their claims as a collective action under the FLSA and as a class action under the Illinois labor laws. Defendants now move for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. A dispute is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009). To establish a genuine issue of fact, the non-moving party "must do more than show that there is some metaphysical doubt as the material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).

## III. DISCUSSION

Defendants move for summary judgment arguing that Plaintiffs, and all others similarly situated, are subject to the jurisdiction of the Secretary of Transportation, ("SOT"), thus making the overtime provisions of FLSA and IMWL inapplicable. Defendants claim the Motor Carrier Act ("MCA") precludes Plaintiffs from recovering overtime pay as a matter of law. Specifically, Defendants contend that SOT has jurisdiction because (1)

Defendants' business involves interstate commerce; (2) Defendants' vehicle fleet is mainly composed of large vehicles; and (3) Plaintiffs in this case are drivers who drove large vehicles at some point during their employment or could be expected to drive a large vehicle on any given day of their employment.

Plaintiffs contend summary judgment should be denied because the SOT and the MCA should not automatically exempt Plaintiffs from receiving overtime wages. Plaintiffs argue that in the weeks that individual Plaintiffs drove only small vehicles, the MCA overtime exemption should not apply. Plaintiffs urge this Court to undergo a week-by-week analysis to determine whether a named Plaintiff exclusively operated a small vehicle, and in those weeks, find the MCA exemption inapplicable.

**A. FLSA and MCA**

The FLSA requires employers to pay employees one and one-half times their normal hourly wage for each hour they work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Generally, employees of a motor carrier that engages entirely in intrastate commerce are subject the Secretary of Labor's jurisdiction and consequently the overtime provisions of the FLSA. *Johnson v. Hix Wreck Service, Inc.*, 651 F.3d 658, 660 (7th Cir. 2011). However, "employees of a motor carrier that engages in interstate commerce may come under the Secretary of Transportation's jurisdiction under the Motor Carrier Act [MCA]." *Id.* at 660-61 citing 49 U.S.C. § 31502. These

employees are "exempt from the FLSA's maximum hour and overtime provisions pursuant to the FLSA's motor carrier exemption." *Id.* While many motor carrier employers engage in both intrastate and interstate commerce, an employee "cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation simultaneously." *Id.* citing *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994). It is the burden of the motor carrier employer to show that the employee is exempt from the overtime provisions of the FLSA. *Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 990 F.2d 279, 282 (7th Cir. 1999).

The Seventh Circuit has explained that the applicability of the MCA exemption depends on the activities of individual employees. *See Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009). An employee is subject to the MCA exemption if he/she: (1) is employed with "a [motor] carrier subject to the power of the Secretary of Transportation"; (2) is engaged "in activities directly affecting the operational safety of motor vehicles"; and (3) is "engaged in interstate commerce." *Thompson v. K.R. Denth Trucking*, Inc., No. 1:10-CV-0135-TWP-MJP, 2011 WL 649680 at *3 (S.D. Ind. Feb. 3, 2011).

Prior to August 10, 2005, a motor carrier was defined under the MCA as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12) (2004). However, on

August 10, 2005, Congress enacted the Safe, Accountable, Flexible and Efficient Transportation Equity Act: A Legacy for Users (the "SAFETEA-LU"), amending the definition of motor carrier and motor private carrier to include only commercial motor vehicles. 49 U.S.C. § 13102(14) (2005). This amendment had the effect of altering the class of employees exempt from the FLSA and removing from the Secretary of Transportation's jurisdiction any employee who did not operate a commercial motor vehicle. *See* 49 U.S.C. § 31132(1). Pursuant to the 2005 amendment, commercial vehicles were defined as vehicles having "a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds." 49 U.S.C. §31132(1)(A).

On June 6, 2008, Congress enacted the SAFETEA-LU Technical Corrections Act of 2008 (the "TCA"). Pub.L 110-224, 122 Stat. 1572 (2008). Section 305 of TCA replaced the previously changed language in SAFETEA-LU, restoring the 2004 "motor carrier" language in lieu of the 2005 commercial motor vehicle definition. However, Section 306(c) of the TCA provided that the FLSA shall apply to a "covered employee" notwithstanding Section 13(b)(1) (the exemptions section) of FLSA. TCA defined a "covered employee" as one:

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by Section 13102 of Title 49, United States Code, as amended by Section 305);
>
> (2) whose work, in whole or part, is defined as:
> (A) that of a driver, driver's helper, loader, or mechanic; and

(B) affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles —

(i) designed or used to transport more than 8 passengers (including the driver) and not used to transport for compensation; or

. . .

(iii) used in transporting material . . .; and

(3) who performs duties on motor vehicles weighing less than 10,000 pounds or less.

Pub.L 110-224, 122 Stat. 1572, Section 306(c).

Thus, the TCA effectively retained the weight requirement for vehicles in order for the Secretary of Transportation to have jurisdiction under the MCA. What the TCA failed to articulate though, was whether employees who work on both vehicles weighing 10,001 pounds and vehicles less than 10,000 pounds would be subject to the jurisdiction of the Secretary of Transportation. Plaintiffs argue that because they have worked on small vehicles for periods of time at Garda, they should be considered "covered employees" pursuant to the TCA. Plaintiffs do not contest that Garda is engaged in interstate commerce. Nor do they contest that Garda is a carrier subject to the Secretary of Transportation, or that Plaintiffs engage in activities which directly affect the operational safety of vehicles. Instead, Plaintiffs contend that they are not covered by the MCA because in certain weeks certain

employees worked exclusively in vehicles with a GVWR of less than 10,001 pounds. Plaintiffs point to the language of the TCA and the Department of Labor's Field Assistance Bulletin (the "Bulletin") as support. *See* Field Assistance Bulletin 2010-2, November 4, 2010 (explaining that the "four month" rule stems from the Department of Transportation's interpretation of the MCA . . . conferring that agency jurisdiction over employees for a four-month period beginning with the date they could have been called upon to, or actually did, engage in . . . interstate activities [and] triggering the overtime pay exemption for that period.")

The Court acknowledges that the Bulletin Plaintiffs' reference has the potential to support Plaintiffs' position. However, the Court finds the Bulletin to lack clarity regarding the issue of employers with mixed vehicle fleets like Garda and finds the Bulletin contrary to binding Seventh Circuit authority. Thus, the Court does not afford the Bulletin great deference. *See Howard v. City of Springfield*, 274 F.3d 1141, 1146 (7th Cir. 2001) (stating an interpretative bulletin . . . from the Department of Labor does not have the force of binding law . . . [and] [i]t is therefore not entitled to deference . . ."); *see also Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2166-67 (2012) (refusing to give *Auer* deference to the Department of Labor's interpretation of its own regulations because "agencies should provide regulated parties

fair warning of the conduct [a regulation] prohibits or requires.”).

What this Court finds persuasive is the Seventh Circuit decision in *Collins v. Heritage Wine Cellars, LTD.*, 589 F.3d 895 (7th Cir. 2009). In *Collins*, the court addressed the issue of whether a portion of transportation that is entirely within Illinois is nonetheless interstate commerce within the meaning of the MCA. *Id.* After finding that it was, Judge Richard Posner addressed the plaintiffs’ additional argument which was that because some plaintiffs drove trucks lighter than 10,001 pounds between 2005 and 2008, the MCA exemption should not apply. *Id.* at 901. In rejecting this argument, Posner stated,

> [d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

*Id*.

The Court finds the plaintiffs’ argument in *Collins* identical to the Plaintiffs’ argument here, and as such, refuses to undergo a week-by-week analysis to determine what regulatory overtime scheme should apply to each individual Plaintiff for each week of work. The Court finds this would be, as Judge Posner stated, burdensome.

Moreover, Plaintiffs' attempt to distinguish *Collins* is futile. Plaintiffs allege that unlike the *Collins*, some of the named Plaintiffs here engaged in large vehicles so infrequently that those trips should be considered "de minimis." Pl. Opp'n to Defs.' Mot. for Summ. J. at 9. Plaintiffs rely on *McGee v. Corporate Express Delivery Systems* and *Vidinliev v. Carey International, Inc.* to support their position. *McGee v. Corporate Express Delivery Systems*, No. 01-C-1245, 2003 WL 22757757 (N.D. Ill. Nov. 20, 2003); *Vidinliev v. Carey International, Inc.*, 581 F.Supp.2d 1281 (N.D. Ga. 2003). The Court not only finds both cases distinguishable, but also notes that both cases occurred prior to the Seventh Circuit's holding in *Collins*. Thus, the Court is not persuaded.

Since *Collins*, the Seventh Circuit again addressed the issue the applicability of the MCA exemption to FLSA in *Johnson v. Hix Wrecker Service, Inc*, (notably, a case decided after the Department of Labor issued the Bulletin). *Johnson v. Hix Wrecker Service, Inc.*, 651 F.3d 658 (7th Cir. 2011). In *Johnson*, the Seventh Circuit reversed a district court's decision granting summary judgment to an employer because the Seventh Circuit found the employer's evidence insufficient to show that his employee fell within the MCA exemption. *Id.* at 662. In making its determination, the Seventh Circuit found that the employer's "affidavit . . . [failed to] show that Hix Wrecker [the employer]

engaged in interstate commerce within a "reasonable period of time" prior to the time during which it claims the exemption . . . [a]nd the affidavit does not establish that Johnson [plaintiff] was subject to being used in interstate commerce during a four-month period or during any other "reasonable period of time."" *Id.* citing 46 Fed. Reg. 37,902.

In *Johnson*, the Seventh Circuit relied on the Department of Transportation's interpretation of MCA which attempted to clarify the extent of the Secretary of Transportation's jurisdiction. It states:

> [For an employee to fall under the Secretary of Transportation's jurisdiction] . . . the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce . . . If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs. . . . [Additionally] evidence of driving in interstate commerce should be accepted as proof that the driver is subject to [the Secretary of Transportation's jurisdiction] for a 4-month period from the date of proof.

46 Fed. Reg. 37,902.

In *Johnson*, the only evidence the employer submitted as proof of the Secretary of Transportation's jurisdiction was an affidavit from its corporate secretary which stated that the employer's

drivers could be subject to being assigned to an interstate trip on any given day. *Id.* at 662-63.

Unlike the affidavit in *Johnson*, here, Defendants provided the Court a multitude of exhibits detailing the driving records for every named Plaintiff in this case. The Court finds these records telling. The records not only reveal that every named Plaintiff has driven a large vehicle, but also show that 21 out of the 34 named Plaintiffs have driven large trucks more than 80 percent of the time at Garda. Moreover, even Plaintiff Jaramillo, the individual Plaintiff who drove large vehicles the least amongst all other Plaintiffs, still drove large vehicles on 11 different occasions. The Court finds this to be a "reasonable amount of time," particularly because it is clear that Plaintiff Jaramillo could be expected to drive a large vehicle on any given day of his employment with Garda. Indeed, Defendants have provided "concrete evidence" that all Plaintiffs could be expected to be a driver or messenger in a large vehicle on any given day of their employment. *Id.* Because of this, the Court finds Defendants have satisfied their burden of proof regarding each employee's exemption from FLSA.

**B. Plaintiff's Request to Amend their Complaint**

At the end of Plaintiffs' Response to Defendants' Motion for Summary Judgment, Plaintiffs request leave to amend their Complaint to "resolve any remaining disputes." Pl. Opp. to Def.'s Mot. for

Summ. J. at 12. Specifically, Plaintiffs seek to amend the definition of the class as follows:

> All individuals who were employed or are currently employed, by one or more of the Defendants, its subsidiaries or affiliated companies as armored transport employees or any other similarly titled position at any time during the relevant statute of limitations period and who exclusively drove a small vehicle (less than 10,001 lbs.) during any work week.

*Id.*

Defendants oppose Plaintiffs request to amend their Complaint, arguing that the proposed modification of the class definition would have the same deficiencies as the current Complaint.

Federal Rule of Civil Procedure 15 states that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15. However, under Rule 15, a court "may deny leave to amend on the grounds of undue delay, bad faith, dilatory motive, prejudice, or futility." *Guise v. BMW Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004) citing *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

The Court finds here that even if it granted Plaintiffs leave to amend their class definition, the class would still suffer the same flaws as the current class definition, and thus, would not survive summary judgment. This is due in part because of the holding in *Collins*, which expressly denied an employee's request to undergo a week-by-week analysis to determine whether FLSA applied,

and in part because Garda has provided the Court sufficient evidence to determine that all employees at Garda can be expected to drive a large vehicle on any given day of their employment. *See Collins*, 589 F.3d at 901; Def. Reply Br. in Supp. of Mot. for Summ. J. Ex. 1. Moreover, the fact that the courts have consistently held that an employee cannot be subject to the jurisdiction of the Secretary of Transportation and the Department of Labor simultaneously provides added support. See *Johnson*, 651 F.3d at 660. As such, the Court denies Plaintiffs Motion to Amend their Complaint.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:**10/17/2012